KINGS COUNTY—HON. ROSWELL C. BRAINARD, SURROGATE—January, 1859.

## KEARNEY v. THE BROOKLYN INDUSTRIAL SCHOOL ASSOCIATION AND HOME FOR DESTITUTE CHILDREN.

Where a father, by an instrument in writing, surrendered his infant children to the custody of a charitable institution, with the powers and subject to the provisions contained in its act of incorporation;—*Held*, that notwithstanding such surrender, the surrogate may appoint a general guardian of the children. The obligations of such a guardian are not inconsistent with the guardianship which the institution may claim under the act of its incorporation.

John Laffin died December 17th, 1858, intestate, leaving two children: Catharine, aged about five, and Mary Ann,

about three years of age, and no widow.   December 13th, 1858, he executed and delivered an instrument in writing, as follows:

"I, John Laffin, of the city of Brooklyn, father of Catharine or Kate, and Mary Ann Josephine Laffin, do commit and surrender said children to the care and management of the Brooklyn Industrial School Association and Home for Destitute Children, with the powers and subject to the provisions contained in the act incorporating the said Association and Home.

"Dated, Brooklyn, Dec. 13th, 1858.            his

                                         JOHN ✕ LAFFIN,
"Witness, ANNE KIMBERLY.                      mark.
"Witness, SUSAN C. SMITH."

The following was written on the margin:   ".Catharine Laffin,'born 26th October, 1853.   Mary Ann Josephine Laffin, born 19th October, 1855."

The children remained with their father until his death, when they were taken by the Brooklyn Industrial School Association.

On the 22d of December, 1858, Thomas Kearney, the maternal grandfather of said children, presented a petition to the surrogate, asking to be appointed guardian of the persons and estates of said children.   Notice of hearing was served on James Laffin, an uncle, and Ann Nolan, an aunt of said minors, on their father's side.   The Brooklyn Industrial School Association and Home for Destitute Children, filed an affidavit proving the execution of said surrender, and claimed that the surrogate had no jurisdiction to appoint a guardian for said minors, by reason of the surrender.

After the decision of the surrogate that he had jurisdiction, an application was filed by James Laffin to be appointed guardian of said minor children.

JOHN GREENWOOD, *for Petitioner.*

JESSE C. SMITH, *for the Contestants and for Laffin.*

THE SURROGATE.—These children are daughters of John Laffin, who died in Brooklyn, on or about Dec. 15th, 1858, leaving no property.

Their mother died in March, 1858.   One of the children is about five years of age, the other is about three years.   They have no brothers or sisters, and it does not appear that their grandfather, on their father's side, is living.

During his last illness, and just previous to his death, their father signed a writing, by making his mark in the presence of witnesses, committing these children to the care and management of the Brooklyn Industrial School Association and Home for Destitute Children, a corporation organized by an act of the Legislature, passed in 1857.   This association now has the custody of the children.

Mr. Thomas Kearney, the grandfather of the children on the mother's side, makes application to this court to be appointed guardian of the children.   The appointment of Kearney was first objected to on the ground that the Brooklyn Industrial School Association, having the custody of the children by the consent of the father given in writing, they were, under their act of incorporation, the legal guardians of the children, and that the surrogate had no jurisdiction to appoint a guardian.

This objection was overruled, on the ground that there was nothing in the said act inconsistent with the provisions of the Revised Statutes under which application had been made for letters of guardianship, and that under the provisions of the statutes, the surrogate was bound, on application, to appoint some suitable person as guardian of the children.

Mr. Kearney was then objected to as being an unsuitable person, and James Laffin, an uncle of the children, made application to be appointed guardian.

The appointment of Mr. Laffin was also objected to as being an unsuitable person, possessing no means to provide for the children, and testimony was taken as to the character and circumstances of both applicants.

From this testimony it appears, that Mr. Kearney has a

place of business in the basement of house No. 176 York-street, at which place he resides with his wife; that he makes and sells boots and shoes, and that the receipts from his business average $10 per week; that he has some money laid aside, and that he is able and willing to take the charge of the children.

It also appears that the children resided much with Mr. Kearney during the lifetime of their parents, and that he assisted both the mother and father in their lifetime, because the father was sickly, and that he purchased a place of burial for the wife and another child of John Laffin.

It seems, also, that Kearney, in October last, took these children to his home from the poorhouse, at which place they had been placed by their father and James Laffin, because they were unable to support them for want of work.

James Laffin, who asks to be appointed guardian of the children, is, it appears, a young man, about twenty-three years of age, a varnisher by trade, and unmarried. He resides with his sister in the upper part of a rear house, known as No. 111 Concord-street. His means for providing for the children appear from the testimony to be precarious, depending upon whether he gets work as a varnisher. During the last fall, the father, James, and their sister, living together, could not support the children, and for this reason placed them in the almshouse at Flatbush.

So far as regards any expressed wishes on the part of John Laffin, relative to the care and custody of the children after his decease, there appears little in the testimony which would favor the appointment of one of the applicants in preference to the other. It seems, at one time he determined to give them to their grandfather, Mr. Kearney; and afterwards said he did not want them at Mr. Kearney's so long as he was able to take care of them. At another time he wished James and his sister to take care of them; and during his last illness, when asked by one of the ladies of the Industrial School Association, what provision he had made for his children, he said that he intended to leave them with his brother

and sister. But afterwards, when the character of the School and Home was explained to him, he determined to give them into the charge of that institution, and signed a paper to that effect. His *last* expressed wish in relation to the children appears to have been, that the said institution should have charge of the children.

Mr. Laffin was poor and sick. It was natural that he should be anxious for the welfare of his children. Their grandfather wanted them given to him. His brother and sister wanted them. He did not know what to do. One of the ladies of the Industrial School Association swears that, up to a short time before his death, "he appeared lost as to the care of his children—what he should do with them;" and finally he concluded to give them to the Industrial School Association.

I cannot, of course, under the provisions of the Revised Statutes, appoint a corporation guardian of the person and property of these children; nor do I perceive any thing in the nature of the guardianship which the Industrial School Association may claim under the act by which they were incorporated, which can be inconsistent with the obligations of a guardian appointed by this court, to see that the children are properly cared for, even when in the custody of said institution.

There is no evidence before me as to the religious creed or belief of either of the persons who have petitioned for letters of guardianship. There was an offer of evidence to show that the father of the children was a Catholic, and received the sacrament of that church twice just previous to his death. But the testimony was objected to as immaterial and irrelevant to the case, and ruled out.

From the testimony in the case as to the character and circumstances of the two persons who have applied for letters, I am satisfied that Mr. Kearney is the most suitable person for guardian of these children, and that the prayer of his petition should be granted.

On the order of the surrogate, appointing Thomas Kearney the guardian of the persons and estates of the children, a petition was presented on behalf of Kearney, as such guardian, to the county judge, stating that the children were detained and restrained from their liberty by the Brooklyn Industrial School Association, &c., and asked for a *habeas corpus*, commanding the respondents to bring the children before him. After the hearing, the county judge made. an order discharging the children from the custody of the respondents, and ordering them to be delivered to the relator, Thomas Kearney, on the grounds:

*First.* That the decision of the surrogate, upon the surrender, was *res adjudicata*, and that the surrogate having pronounced the surrender invalid, the county judge was bound by such decision.

*Second.* That the surrender was conditional, and not to take effect until the death of John Laffin, and, therefore, invalid.

An appeal was taken by the respondents to the Supreme Court. The General Term, second district, reversed the proceedings and order of the county judge, and awarded a restitution of the children to the care and custody of the respondents. The opinion of the court, by BROWN, J., is reported in *People* v. *Kearney* (31 *Barb.*, 430; S. C., 19 *How. Pr.*, 493).